UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| B.S. AND K.S., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No.: 2:21-CV-171-KAC-CRW |
| CARTER COUNTY BOARD OF EDUCATION, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS**

This case is before the Court on the "Renewed Motion to Dismiss" filed by Defendant Carter County Board of Education (CCBOE) [Doc. 33]. Because the Complaint fails to state a claim to relief that is plausible, the Court **GRANTS** Defendant's Motion and **DISMISSES** this action.

**I.    Background[1]**

Plaintiff B.S. attends Happy Valley High School, a public school in the Carter County School System [Doc. 1 ¶¶ 9, 11]. B.S. has CLN3 Batten Disease and has "highly significant mobility issues related to her disability" [*Id.* ¶¶ 11-12]. B.S. "receives special education services" at Happy Valley through an Individualized Education Plan (IEP)[2] [*Id.* ¶ 14; *see also* Doc. 9-1].

---

[1] At this stage in the litigation, the Court construes the Complaint in the light most favorable to Plaintiffs, accepts all well-pled factual allegations as true, and draws all reasonable inferences in Plaintiffs' favor. *See Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016).

[2] The Complaint does not expressly state that B.S. has an IEP. However, the Complaint references B.S.'s receipt of "special education services" due to her medical condition [Doc. 1 ¶¶ 11, 12, 14]. CCBOE filed B.S.'s IEP [Doc. 9-1]. And no Party disputes that this IEP was operative during the time relevant to this case. "Sixth Circuit case law is very clear that courts may consider documents that are referenced in the . . . complaint and that are central to [a] plaintiff's claims." *Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42 (6th Cir. 2021) (citing *Rondigo, L.L.C.*

On or about August 24, 2021, B.S.'s IEP team, comprised of B.S.'s parents, teachers, and medical providers (among others), developed B.S.'s IEP for the 2021-2022 school year [*See* Doc. 9-1 at 1]. The IEP stated that B.S. required "specialized instruction and related services in a CDC [Comprehensive Development Class] program" [*Id.* at 2, 23]. Under the IEP, school officials were required to work to improve B.S.'s independence, "endurance [,] and use of assistive devices to allow her to fully participate in indoor and outdoor classes . . . in order to have a more productive day" [*Id.* at 16]. The IEP stated that B.S. could, and should, use a gait belt, rollator, or cane "for participation in school related activities" [*Id.* at 4, 17]. The IEP noted that B.S. requires "significant assistance boarding/disembarking vehicles" [*Id.* at 6]. But the IEP did not require use of a wheelchair, [*see id.*], or identify the need for a wheelchair-accessible bus or other special transportation provided by the school, [*id.* at 23 (noting "Special Transportation" to be "Provided by Parents")].

Prior to October 2021, school officials accommodated B.S.'s limited mobility on field trips by using a "transfer chair" [Doc. 1 ¶ 22]. However, on October 10, 2021, B.S. suffered a seizure that further limited her mobility [*Id.* ¶ 17]. This made "past accommodations" "not applicable" [*Id.* ¶¶ 17, 22-23].

On October 20, 2021, B.S. went on a school field trip to Cades Cove with her CDC [*Id.* ¶ 18]. K.S., B.S.'s mother, "was told just two days prior [to the field trip] that no wheelchair accessible buses were available for the field trip" [*Id.*]. "B.S.'s teacher" and a "bus driver" "implied that there is only one accessible bus for B.S.'s part of the county" [*Id.* ¶ 20]. "But the bus was needed to make the regular morning and afternoon runs for both the high school and

---

*v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)). Accordingly, the Court may consider B.S.'s operative and undisputed IEP in assessing Defendant's Motion.

CDC class(es) at another school" [*Id.*]. During the field trip, "school staff" worked to get B.S. onto and off of the bus using a gait belt and folding wheelchair, as they had for previous field trips [*Id.* ¶¶ 21-22; Doc. 9-1 at 4]. B.S. had to "embark and disembark the bus multiple times for their various activities and was prevented from being able to nap comfortably [in the personal wheelchair she had but did not bring on the trip]" throughout the day [Doc. 1 ¶ 26]. As a result, "B.S. was very fatigued for days following the field trip," putting her "at risk for tonic clonic seizures" [*Id.*].

The "CDC classes" were scheduled to go on another field trip on December 10, 2021 [*Id.* ¶ 29]. K.S. verbally informed "B.S.'s staff that B.S. would need a wheelchair accessible bus" to attend the December 10 field trip [*Id.*]. Following this discussion, K.S. "was left with the impression that it was doubtful one would be available" [*Id.*]. Ultimately, however, "a new bus was brought in" that was "sufficient to accommodate B.S.'s needs" [Doc. 16 (rough transcript on file with the Court)].[3] And B.S.'s IEP team revised her IEP "to provide for a . . . complete change of goals to address . . . [B.S.'s] physical needs and to provide for special transportation going forward" [*Id.*].

At issue here are Counts One and Two of the Complaint [Doc. 1].[4] Count One alleges that CCBOE discriminated against B.S. based on her disability, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, when it failed to provide a wheelchair-accessible bus

---

[3] "A district court should generally consider only the pleadings when ruling on a motion to dismiss." *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, *1 (6th Cir. Mar. 14, 2023) (citing *Rondigo, L.L.C.*, 641 F.3d at 680). But "[a]t the motion-to-dismiss stage, a district court may also consider exhibits attached to the complaint, public records, items appearing in the record of the case and materials appropriate for the taking of judicial notice" *Id.* (cleaned up) The Court need not ignore Plaintiffs' admissions on the record in adjudicating this Motion. *See EHPLabs Rsch., LLC v. Smith*, No. 5:22-CV-0653, 2022 WL 3139604, *1, *3 (N.D. Ohio Aug. 5, 2022).
[4] The Court previously dismissed Count Three [*See* Doc. 28].

for the October 20 field trip [Doc. 1 at ¶¶ 35-58]. Count One also alleges that "[b]ecause B.S. will continue receiving education and related services at Defendant, she will face discrimination . . . again" [*Id.* at ¶ 57]. Count Two alleges that CCBOE discriminated against B.S. based on her disability, in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12312, based on the October 20 field trip [*See id.* ¶¶ 59-75]. And Count Two alleges that "[t]o date, the Defendant's discriminating actions continue and B.S. suffers harm because of these actions" [*Id.* ¶ 74]. The Complaint did not assert claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, [*see id.*], and it is undisputed that Plaintiffs did not exhaust the IDEA's administrative procedures before filing suit, [*see* Docs. 8 at 2; 12 at 1].

The Complaint seeks declaratory relief and to "permanently enjoin Defendant . . . from its discriminatory practices and procedures against B.S." [Doc. 1 at 9, 12]. Further, the Complaint asks the Court to require Defendant to "modify its policies and procedures to ensure that other persons are not so discriminated against" and "develop a clear policy, practice and procedure as it relates to students with mobility issues" [*Id.* at 9-10]. And Plaintiffs ask the Court to "enter an Order directing Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures" [*Id.* at 12]. The Complaint also seeks "compensatory damages," "reasonable attorneys' fees and costs," and "such other, further, and different relief" as the Court "deems necessary, just, and proper" [*Id.* at 9-10, 12].

On May 12, 2023, Defendant filed the instant Motion to Dismiss [Doc. 33]. Defendant asserts that Counts One and Two fail to state a claim upon which relief can be granted [*See* Doc. 34 at 6]. In the alternative, Defendant argues that the Court must dismiss the

entire action because Plaintiffs failed to exhaust their administrative remedies under the IDEA [*Id.* at 8].

**II.     Analysis**

The Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim "has facial plausibility" when the Complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At the motion to dismiss stage, the Court construes the Complaint in the light most favorable to Plaintiffs, accepts all well-pled factual allegations as true, and draws all reasonable inferences in their favor.  *See Hogan*, 823 F.3d at 884.  But a "legal conclusion couched as a factual allegation" is not entitled to the same treatment. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12312.  Section 504 of the Rehabilitation Act generally applies that same prohibition to any federally funded "program or activity" but the causation standard is higher—any discrimination must occur "solely by reason of" the plaintiff's disability.  *See* 29 U.S.C. § 794(a). "Apart from § 504's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of . . . [Title II and Section 504] are precisely the same." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir.

2008) (cleaned up). Accordingly, analysis of Title II claims generally "applies to claims made pursuant to . . . the Rehabilitation Act." *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citations omitted). And there is no reason to distinguish Counts One and Two here.

A plaintiff may raise two types of disability discrimination claims: "claims for intentional discrimination" and claims for failure to provide "a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017) (citation omitted). It is unclear what precise theory or theories Plaintiffs intend to proceed under in Counts One and Two. So, the Court analyzes the Counts under both theories.

Generally, to plead a prima facie case of intentional discrimination, the Complaint must plead facts sufficient to infer that (1) plaintiff "has a disability; (2) she is otherwise qualified [to participate in the program]; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citation omitted). Plaintiffs must allege facts sufficient to establish that "animus against the protected group was a significant factor in the position taken" by Defendant. *See id.* (citations and quotations omitted). "Further, the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular." *Id.* (citation and quotation omitted).

In contrast, a failure to accommodate claim requires Plaintiffs to show that Defendant refused to make a reasonable accommodation for B.S.'s disability. *See Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011). The plaintiff bears the initial burden of requesting an accommodation. *Id.* A defendant "is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the covered entity to the need for" the accommodation. *See Marble v. Tennessee*, 767 F. App'x 647,

6

652 (6th Cir. 2019) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)). Further, the plaintiff must "show that the defendant reasonably could have accommodated . . . [her] disability but refused to do so, and that this failure to accommodate impeded . . . [her] ability to participate in, or benefit from, the subject program." *See Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023) (cleaned up) (citations and quotations omitted). "The plaintiff must establish both that . . . [her] preferred accommodation was reasonable, *and* that the accommodation provided to . . . [her] was unreasonable." *See id.* (citing *Doe ex rel. K.M. v. Knox Cnty. Bd. of Educ.*, 56 F.4th 1076, 1088 (6th Cir. 2023)).

### A. The Complaint fails to state a claim for intentional discrimination.

As an initial matter, the Complaint fails to state a claim for intentional discrimination. The Complaint does not allege facts suggesting that any animus toward B.S.'s disability played a significant factor in CCBOE's failure to provide a wheelchair-accessible bus for the October 20 field trip, or any future field trip.[5] *See Anderson*, 798 F.3d at 357. In other words, the Complaint does not suggest that CCBOE intentionally deprived B.S. of a wheelchair-accessible bus because of her disability. *See id.* Rather, the Complaint attributes Defendant's failure to provide a wheelchair-accessible bus for the October 20 field trip to a general lack of resources to handle the needs of all disabled students, rather than any discriminatory animus [*See* Doc. 1 ¶¶ 18, 20 (individuals "implied that there is only one accessible bus for B.S.'s part of the county" but "that bus was needed to make the regular morning and afternoon runs for both the high school and CDC class(es) at another school")]. And there are no allegations that CCBOE had a

---

[5] To the extent that Plaintiffs still intend to proceed with a claim based on the December 10 field trip, or any future field trip, they would lack standing to raise that claim because the Complaint does not allege facts sufficient to show that they suffered an "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). And the Court dismisses any intended claim on that basis.

7

"discriminatory motive." *See M.Q.*, 62 F.4th at 1000 ("[P]roof of discriminatory motive is critical" (cleaned up)). Accordingly, the Court dismisses any claims for intentional discrimination.

### B. The Complaint fails to state a claim for failure to provide a reasonable accommodation.

In addition, the Complaint fails to state a facially plausible claim against CCBOE for failure to provide a reasonable accommodation. ***First***, the Complaint does not assert that before the October 20 field trip, Defendant CCBOE had knowledge of B.S.'s October 10 seizure or the resulting desire to provide a different accommodation to B.S., including the wheelchair-accessible bus.[6] The Complaint asserts that "[a]ll of the school administrators and relevant personnel ***are aware*** of B.S.'s limitations relating to her impairment" [Doc. 1 ¶ 15 (emphasis added)]. But that conclusory assertion does not permit the Court to infer that appropriate representatives of CCBOE ***were aware*** of B.S.'s increased limitations between her October 10 seizure and the October 20 field trip and that Plaintiffs requested a wheelchair-accessible bus or otherwise alerted CCBOE of the need at the relevant time. Further, the Complaint alleges that K.S. "was told just two days prior that no wheelchair accessible buses were available for the field trip," [Doc. 1 ¶ 18], but the Complaint does not allege, or provide facts sufficient to infer, that Plaintiffs requested a wheelchair-accessible bus or "otherwise alert[ed]" CCBOE of the need for this accommodation in advance of the field trip. *See Marble*, 767 F. App'x at 652. In fact, the Complaint asserts only that K.S. requested an accommodation for B.S. ***after*** the October 20 field trip, [*see id.* ¶ 29], a request that CCBOE ultimately honored, [*see* Doc. 16]. Accordingly, the Complaint fails to state a

---

[6] To the extent that Plaintiffs intend to move forward with a claim based on the December 10 field trip, or a future field trip, they would lack standing to raise that claim because the Complaint does not allege that they suffered an "injury in fact" that is "actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (cleaned up). And the Court dismisses any intended claim on that basis.

plausible claim for failure to provide a reasonable accommodation under either Title II or Section 504.

***Second***, even presuming that the Complaint allowed the Court to infer that before the October 20 field trip Plaintiffs asked CCBOE to provide a wheelchair-accessible bus, instead of the accommodations outlined in B.S.'s IEP, the Complaint would fail to state a claim. Plaintiffs' filings fail to "grapple with existing law establishing that . . . [CCBOE] must provide *reasonable* accommodations . . . not the *best* accommodations or . . . [Plaintiffs'] *preferred* accommodations." *See M.Q.*, 62 F.4th at 1001 (citing *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (citations omitted)). The Complaint does not allege that the accommodations CCBOE provided to B.S. during the October 20 field trip failed to comply with her then-operative IEP. Instead, the Complaint asserts that these accommodations were "not applicable" and therefore presumably unreasonable [Doc. 1 ¶ 23]. But the Complaint does not include facts that would allow the Court to infer that the accommodations CCBOE provided were unreasonable and that Plaintiffs' preferred accommodation is a reasonable accommodation.[7] *See M.Q.*, 62 F.4th at 1000 (requiring plaintiff to establish "both that his preferred accommodation was reasonable, *and* that the accommodation provided to him was unreasonable" (citation omitted)). Accordingly, the Court dismisses Plaintiffs' claims for failure to provide a reasonable accommodation under Title II and the ADA.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's "Renewed Motion to Dismiss" [Doc. 33] and **DISMISSES** this action. Because the Court grants Defendant's Motion

---

[7] To be sure, a wheelchair-accessible bus may be a reasonable accommodation, but the Complaint does not include sufficient facts to permit the Court to make that inference here.

9

based on failure to state a claim, the Court need not address Defendant's IDEA exhaustion argument.[8]  An appropriate judgment shall enter.

SO ORDERED.

s/ Katherine A Crytzer
KATHERINE A. CRYTZER
United States District Judge

---

[8] The Sixth Circuit has suggested, without deciding, that the failure to exhaust administrative procedures under the IDEA is not jurisdictional.  *See Doe ex rel. K.M.*, 56 F.4th at 1084.